IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT BOGGS,

                Plaintiff,                          CV-09-116-ST

      v.                                            FINDINGS AND
                                                          RECOMMENDATIONS
JOHN K. HOOVER, JOHN C. BRADLEY,
CHARLES R. FRENCH, JO'EY STEWART,
AGNES SOWLE, and KATHRYN A. SHORT,

                Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Robert Boggs ("Boggs"), served as the Chief Deputy Medical Examiner of the Multnomah County Medical Examiner's Office for over five years from August 1, 2001, until early 2007 when he was asked to resign under threat of termination. On May 10, 2007, Boggs filed an action in Multnomah County Circuit Court, *Robert Boggs v. Schrunk, et al*, Case No.

1 - FINDINGS AND RECOMMENDATIONS

0705-05342, ("*Boggs I*"), alleging a state law claim for declaratory and injunctive relief against Multnomah County and its District Attorney, Michael Schrunk ("Schrunk"), as well as two claims for intentional interference with employment against Schrunk and a wage claim against Multnomah County. Boggs subsequently amended his pleadings to include a claim for violation of his due process rights under 42 USC § 1983. Defendants thereafter timely removed *Boggs I* to this court (Case No. 07-CV-954-ST).

After both sides filed summary judgment motions in *Boggs I*, this court recommended granting summary judgment against all claims except the Fifth Claim (due process violation) against Multnomah County. *Boggs I*, Findings and Recommendations (docket #114) ("*Boggs I* F&R"). This court later held further proceedings (including a partial evidentiary hearing) concerning the issue of Multnomah County's liability on the Fifth Claim (docket #128). After Boggs requested additional discovery and filed this action (*Boggs II*), this court stayed *Boggs I* pending the completion of discovery and filing of dispositive motions in *Boggs II* (docket #130).

The original Complaint in *Boggs II* alleged a single claim under 42 USC § 1983 for violation of his Boggs' due process rights against: (1) four individuals employed in the District Attorney's Office: John K. Hoover ("Hoover"), John C. Bradley ("Bradley"), Jo'ey Stewart ("Stewart"), and Charles R. French ("French"); and (2) two attorneys in the Multnomah County Attorney's Office: Agnes Sowle ("Sowle") and Kathryn A. Short ("Short"). Boggs contended that these six individuals participated in the publication of stigmatizing charges against him in connection with his termination and failed to provide him with notice and an opportunity for a name-clearing hearing, thereby depriving him of his liberty interest in violation of his due process rights under the Fourteenth Amendment.

2 - FINDINGS AND RECOMMENDATIONS

Defendants Hoover, Bradley, and French filed an Answer on February 23, 2009 (docket #20). Sowle, Short, and Stewart filed an Amended Motion to Dismiss (docket #17). On May 21, 2009, this court recommended dismissing the claims against Stewart with prejudice due to the fact that her role as Schrunk's Executive Assistant, if any, was limited to the clerical task of compiling documents for disclosure pursuant to the direction of others. *Boggs II* Findings and Recommendation (docket #33) ("*Boggs II* F&R"). This court also recommended dismissing the claim against Sowle and Short without prejudice and with leave to replead. *Id*, p. 23. On August 6, 2009, Judge Garr M. King adopted that Findings and Recommendation. *Boggs II* Order (docket #55) ("*Boggs II* Order").

This court has original jurisdiction over Boggs' federal statutory claim under 28 USC § 1331. Boggs filed his First Amended Complaint for Civil Rights Violation ("FAC") on August 17, 2009 (docket #56). Defendants Sowle and Short then filed an interlocutory appeal to the Ninth Circuit (docket #67) which was rejected for lack of appellate jurisdiction (docket #85).

In response to the FAC, two motions are now before this court, namely the: (1) Motion to Dismiss the Amended Complaint filed by Short and Sowle (docket #89); and (2) Motion for Summary Judgment filed by Hoover, Bradley, and French (docket #91). For the reasons that follow, the motions should be granted because each defendant is entitled to qualified immunity.

## ALLEGATIONS

In December 2006,[1] Multnomah County conducted an investigation of Boggs. FAC, ¶ 6. As part of that investigation, Multnomah County and the District Attorney's Office prepared an

---

[1] The FAC alleges the date as December 2007, which appears to be a typographical error as to the year.

investigation report recommending that Boggs be dismissed.[2]  *Id*.  Schrunk met with Boggs on January 5, 2007, and presented him with the option to resign or be fired.  *Id*, ¶ 7.  Boggs signed a memorandum tendering his resignation, effective February 5, 2007.  *Id*, ¶ 8; *Boggs I*, Brischetto Aff.[3] (docket #68), Ex. L.  He was then placed on administrative leave so that his last day on the job was January 5, 2007.  FAC, ¶ 9; *Boggs I*, Brischetto Aff. (docket #68), Ex. K.  Schrunk ordered Boggs not to enter the premises of the Multnomah County Medical Examiner's Office or to have contact with staff during their working hours.  FAC, ¶ 9.  Schrunk's actions forced the termination of Boggs' employment.  *Id*, ¶ 10.

By letter dated February 5, 2007, Boggs' attorney served a Tort Claims Notice[4] on Multnomah County, Schrunk, and Sowle advising that Boggs intended to pursue a tort claim against Multnomah County and that he revoked his resignation.  *Id* at ¶ 11.  The Tort Claims Notice asserted that Multnomah County and the District Attorney had published false, defamatory statements about Boggs which had a tendency to foreclose him from pursuing his normal occupation and that neither Multnomah County nor the District Attorney had provided him with due process prior to interfering in his employment relationship or prior to publishing the stigmatizing information.  *Id*.  Each defendant knew of the Tort Claims Notice served on Schrunk and Sowle.  *Id*, ¶ 13.

---

[2] Based on the evidence submitted in *Boggs I*, this investigation stemmed from an allegation that Boggs improperly used the Law Enforcement Data System ("LEDS").  After an audit, Boggs was found to have used the LEDS for personal purposes on numerous occasions.

[3] Citations to affidavits are identified by the last name of the affiant and the paragraph(s) of the affidavit.

[4] A copy of the Tort Claims Notice is filed in *Boggs I*.  Affidavit of Katharine von Ter Stegge in Support of Defendant Schrunk's Motion for Summary Judgment (docket #77), Ex. J.

On February 23, May 22 and 31, 2007, the District Attorney's office received public records requests from both the *Portland Tribune* and *The Oregonian* newspapers seeking the release of records pertaining to Multnomah County's investigation of Boggs and his dismissal from employment. *Id*, ¶ 14. At some time between February 23 and May 31, 2007, Multnomah County and the District Attorney's Office determined that the investigation report recommending Boggs' dismissal and other records related to the investigation were public records available upon demand. *Id*, ¶ 15. In response to the media requests and some time prior to May 31, 2007, Multnomah County and the District Attorney's Office provided a copy of the investigation report and other records made in connection with Boggs' termination of employment and the alteration of his status as a Deputy Medical Examiner. *Id*, ¶ 16. Boggs contests the accuracy of these charges disclosed by Multnomah County and the District Attorney's Office. *Id*, ¶ 17. The disclosure to the media resulted in May 31, 2007 newspaper articles which discussed the stigmatizing charges, posting of the stigmatizing charges on the internet, and discussion of the stigmatizing charges over the radio. *Id*, ¶ 18.

Boggs alleges that each of the named defendants "failed to provide [him] with notice of the charges against him, an opportunity to review the evidence against him and an opportunity to explain his side of the story prior to depriving him of his liberty interests in his reputation and his right to pursue his chosen occupation" and "failed to provide [him] with a constitutionally sufficient due process hearing after depriving [him] of his liberty interest in his reputation and his right to pursue his chosen occupation." *Id,* ¶ 21. In doing so, Boggs contends that each defendant, acting under color of state law, deprived him of a liberty interest in his reputation and his chosen occupation, without providing him due process of law. *Id*, ¶¶ 22-23. He brings a

5 - FINDINGS AND RECOMMENDATIONS

single claim for relief, alleging that defendants deprived him of his liberty interest by failing to provide him with "pre-deprivation notice and an opportunity for a hearing and/or constitutionally sufficient post-deprivation due process" in violation of the Fourteenth Amendment to the United States Constitution. *Id*, ¶ 27.

In addition to no longer alleging claims against Stewart, the FAC differs from the original Complaint in two primary respects. First, it adds the following allegations against Short and Sowle:

> Defendant Short provided legal advice to Multnomah County and the District Attorney's Office concerning plaintiff's dismissal, the denial of plaintiff's demand to revoke his resignation, plaintiff's Tort Claim Notice asserting a denial of due process and whether the documents containing the stigmatizing charges were to be provided to the requests. Defendant Sowle knew or reasonably should have known of defendant's [sic] Short's legal advice and also provided legal advice to Multnomah County and the District Attorney's Office concerning whether the documents containing the stigmatizing charges were to be provided in response to the requests.

FAC, ¶ 20.

Second, it alleges that defendants not only failed to provide him with notice and an opportunity for a hearing prior to publishing the stigmatizing charges, but also "failed to provide [him] with a constitutionally sufficient due process hearing *after* depriving [him] of his liberty interest in his reputation and his right to pursue his chosen occupation." FAC, ¶ 21 (emphasis added).

///

///

///

6 - FINDINGS AND RECOMMENDATIONS

**FINDINGS**

**I. Qualified Immunity**

The remaining five defendants are three Deputy District Attorneys employed in the Multnomah County District Attorney's Office and two attorneys employed by the Office of the Multnomah County Attorney. Boggs alleges that both offices determined that the investigation report recommending his dismissal and other records related to the investigation were public records available upon demand, provided a copy of those records to the media, and that each of the five defendants participated in that publication, triggering an occupational liberty interest claim. Each defendant asserts that he or she is entitled to dismissal of, or summary judgment against, Boggs' due process claim based on the doctrine of qualified immunity.

**A. Legal Standard**

Entitlement to qualified immunity is an issue which courts are encouraged to resolve at the earliest possible juncture in order to relieve the official asserting the immunity from the multitude of burdens associated with litigation. *Pearson v. Callahan*, 555 US 223, ___ 129 S Ct 808, 815 (2009). Government officials are entitled to qualified immunity protecting them from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982) (citation omitted).

The analytical framework for analyzing claims of qualified immunity involves a now-familiar "two-part inquiry: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether that right was clearly established 'in light of the specific context of the case.'"

7 - FINDINGS AND RECOMMENDATIONS

*Clairmont v. Sound Mental Health*, 632 F3d 1091, 1100 (9th Cir 2011), quoting *Saucier v. Katz*, 533 US 194, 201 (2001).  Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Pearson*, 555 US at ___, 129 S Ct at 818 (modifying *Saucier*).

      This court concludes that the circumstances of this case counsel in favor of proceeding directly to an analysis of *Saucier's* second prong, namely to determine whether the right asserted was clearly established when the allegedly stigmatizing statements were made.

      B.  <u>Whether Right Was Clearly Established</u>

          1.  <u>Elements of Due Process Claim</u>

      A due process claim under the Fourteenth Amendment requires a plaintiff to prove the existence of an interest protected by the Fourteenth Amendment, a deprivation of that interest by the government, and a lack of required process.  *Ulrich v. City & Cnty. of San Francisco*, 308 F3d 968, 974 (9th Cir 2002).  Occupational liberty interest claims date back at least four decades when "the United States Supreme Court established that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed."  *Cox v. Roskelley*, 359 F3d 1105, 1110 (9th Cir 2004), citing *Bd. of Regents v. Roth*, 408 US 564, 573 (1972).  The Ninth Circuit

///

///

///

///

8 - FINDINGS AND RECOMMENDATIONS

has expounded that such a claim requires proof of publicly disclosed,[5] stigmatizing[6] and substantially false[7] statements made by the government "in the course of" termination,[8] the accuracy of which is contested by the plaintiff.[9] Under these circumstances, the employee must be provided an "'opportunity to refute the charge'" at a hearing which provides the employee "'with an opportunity to clear his name.'" *Codd v. Velger,* 429 US 624, 627 (1977) (citation omitted). This type of hearing is described as a "name-clearing hearing." *Brady v. Gebbie*, 859 F2d 1543, 1553 (9th Cir 1988).

## 2. Controlling Law

Defendants argue that *Tibbetts v. Kulongoski*, 567 F3d 529 (9th Cir 2009), is the controlling precedent which entitles them to qualified immunity. In *Tibbets*, two former SAIF

---

[5] *Portman v. County of Santa Clara*, 995 F2d 898, 907 (9th Cir 1993) ("to infringe upon a constitutionally protected liberty interest, the charges must be published"); *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F2d 773, 777-78 (9th Cir 1982) (interest in liberty is implicated after "some public disclosure" of charge impairing reputation for honesty or morality).

[6] *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F2d 1093, 1100 (9th Cir 1981) ("To implicate constitutional liberty interests . . . the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities."). The statements must effectively foreclose plaintiff from working in his chosen field:
> [I]n order to bring an occupational liberty claim, a plaintiff must show that the character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities. It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field.

*Engquist v. Oregon Dep't of Agric.*, 478 F3d 985, 998 (9th Cir 2007) (internal citations and quotation marks omitted); *see also Stretten v. Wadsworth Veterans Hosp.*, 537 F2d 361, 366 (9th Cir 1976) (contrasting charges which might cause "reduced economic returns and diminished prestige" as insufficient to support a liberty interest claim to those which could result in "permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession," which would be sufficient to support occupational liberty claim).

[7] *Campanelli v. Bockrath*, 100 F3d 1476, 1484 (9th Cir 1996) ("to state a due process claim, [plaintiff] also must allege that the defendants' statements were substantially false"), citing *Codd v. Velger*, 429 US 624, 628 (1977).

[8] *Campanelli*, 100 F3d at 1482 (plaintiff "must also allege that the defendants made their statements 'in the course of' his termination") (citation omitted).

[9] *Orloff v. Cleland*, 708 F2d 372, 378 (9th Cir 1983) ("the accuracy of the charges must be contested"), citing *Vanelli*, 667 F2d at 777.

9 - FINDINGS AND RECOMMENDATIONS

officials brought a § 1983 denial of due process claim against Governor Kulongoski and others for making stigmatizing statements about them in two press releases without providing name-clearing hearings. The first statement was made in 2005, 19 days after their termination, and the second statement was made in 2006, 16 months after their termination. Applying the temporal nexus test from *Campanelli*, the Ninth Circuit found that the second statement was "far too remote" to be actionable. *Id* at 538. Without deciding that 19 days was too remote, it held that a reasonable person would not have known in 2005 whether 19 days after termination would pass the temporal nexus test and, thus, granted qualified immunity to Governor Kulongoski. *Id*.

Boggs was forced out of his job on January 5, 2007, and the publication of the allegedly stigmatizing statements occurred more than 20 weeks later on May 31, 2007. Just as Governor Kulongoski would not have known in 2005 whether 19 days after termination would create a temporal nexus, defendants argue that they would not have known in May 2007 whether the longer period between termination and publication at issue in this case created a temporal nexus. Because the law was not clearly established, they seek dismissal or summary judgment based on qualified immunity.

Boggs responds with a variety of arguments. One argument seeks to shorten the time period at issue. His other arguments concern an alleged factual dispute and the law-of-the-case doctrine.

### 3. Law-of-the-Case

Boggs contends that *Tibbetts* presents no bar to his liberty interest claim because of the prior ruling in this case, *Boggs II* F&R, which was adopted by Judge King (*Boggs II* Order) over the objections filed by Sowle and Short (docket #35).

10 - FINDINGS AND RECOMMENDATIONS

Under the law-of-the-case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F2d 152, 154 (9th Cir 1993). "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition. A significant corollary to the doctrine is that dicta have no preclusive effect." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F2d 703, 715 (9th Cir 1990) (internal quotation marks, brackets, and citations omitted).

Ninth Circuit law has not been entirely clear concerning the limits on a trial court's discretion under the law-of-the-case doctrine. "Our case law leaves some doubt concerning whether the law-of-the-case doctrine constrains a district court's discretion to reconsider its own rulings prior to final judgment." *Mark H. v. Lemahieu*, 513 F3d 922, 932 n8 (9th Cir 2008) (citations omitted). However, the law-of-the-case doctrine is not an "inexorable command," *Hanna Boys Center v. Miller*, 853 F2d 682, 686 (9th Cir 1988) (citation omitted), nor are its "'rules of thumb [meant to act] as straightjackets on the informed discretion and sound practical judgment of the judge.'" *United States v. Smith*, 389 F3d 944, 949 (9th Cir 2004), quoting *Moore's Federal Practice* § 134.21 [1] (3rd ed 2003). Instead, a trial court has discretion to "reopen a previously resolved question" under one or more of the following circumstances:

> (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; [or] (5) a manifest injustice would otherwise result.

*Thomas*, 983 F2d at 155.

///

11 - FINDINGS AND RECOMMENDATIONS

Boggs contends that the necessary implication of Judge King's Order adopting the *Boggs II* F&R is that *Tibbetts* does not bar defendants' bid for qualified immunity. However, that argument should be rejected because no final decision of this court actually addresses the "temporal proximity" issue. The *Boggs I* F&R, pp. 14-17, contains a lengthy discussion concerning the type of temporal nexus between a termination and the publication of stigmatizing statements that will suffice to support a due process (liberty interest) claim. Authored before and without the benefit of the decision in *Tibbetts*, it concluded that a delay of four months between a termination and the publication of stigmatizing charges might support a liberty interest claim. However, it has never been adopted due to the subsequent filing of a Motion for Reconsideration (docket #115), the filing of *Boggs II*, and the stay imposed in *Boggs I*. The premise of the Motion for Reconsideration of *Boggs I* F&R is that this court should not have reached the underlying constitutional issue (and the associated issue of temporal nexus) because Boggs failed to establish a deprivation pursuant to a county custom, policy or practice. If granted, that motion would nullify the F&R's reasoning on the issue of temporal nexus. Accordingly, the *Boggs I* F&R is currently in a state of legal limbo.

The *Boggs II* F&R (adopted by *Boggs II* Order) similarly provides no traction for Boggs' law-of-the-case argument. Perhaps due to the court's lengthy discussion of the temporal proximity issue in *Boggs I* F&R, the *Boggs II* Amended Motion to Dismiss (docket #17) and its supporting memoranda (dockets #16 & #25) do not discuss the temporal proximity issue. Instead, defendants sought dismissal of the Complaint in *Boggs II* based on Boggs' failure(s) to allege intent, an employment action which defendants controlled, a termination as opposed to a resignation, a post-publication right to a name clearing hearing, or a request for a name clearing

hearing. As a result, *Boggs II* F&R says very little concerning the issue of the type of temporal nexus which is sufficient to support a denial of liberty interest claim. To the contrary, it concluded that the conclusory allegations concerning defendants' participation were alone sufficient to require amendment of the pleadings. *Boggs II* F&R, p. 16 ("Boggs makes only a conclusory allegation and fails to specifically allege how each defendant allegedly participated in the deprivation of his liberty interest. . . . For that reason alone, the Complaint is deficient and needs to be amended."). It recommended dismissal without prejudice to cure that specific deficiency by repleading "as to defendants Sowle and Short to specifically allege how they participated in the constitutional deprivation." *Id*, p. 23.

      The Ninth Circuit decided *Tibbetts* a week later. Not surprisingly, defendants' Objections to the *Boggs II* F&R (docket #35) contained a lengthy discussion urging that *Tibbetts* entitled defendants to qualified immunity based on the lack of temporal proximity between the termination and the publication of the stigmatizing statements. On August 6, 2009, Judge King adopted the *Boggs II* F&R without citing or discussing *Tibbetts*. Boggs contends that Judge King's decision implicitly disposes of the temporal proximity issue in his favor. The language of Judge King's Order mirrors the language of the F&R and explicitly grants leave to Boggs to "specifically allege how [Sowle and Short] participated in the constitutional deprivation." *Boggs II* Order, p. 2. Thus, an equally – if not more – plausible interpretation of the procedural posture is that Judge King did not consider the new arguments raised by defendants based on *Tibbetts*, but instead simply adopted the *Boggs II* F&R's finding that the Complaint did not sufficiently allege culpable participation by Sowle and Short. In sum, the present record does not

support Boggs' argument that this court's previous dispositions – either explicitly or by necessary implication – decided the issue now before it based on *Tibbetts*.

As discussed in more detail below, *Tibbetts* is on point and not only requires dismissal of the claims in this case, but also requires this court to vacate contrary findings in *Boggs I* F&R.

### 4. Temporal Link

In response to defendants' contention that *Tibbetts* is controlling, Boggs also argues that there is no "temporal nexus" requirement. However, that argument is easily rejected.

While the "in the course of" termination element "does not require a strict temporal link, . . . the defamatory statement must be 'so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye.'" *Ulrich*, 308 F3d at 983, citing *Campanelli*, 100 F3d at 1482. Citing *Campanelli*, Boggs argues that there is no temporal nexus requirement and that a plaintiff need only show that the defamatory statements were made "in the course" of the adverse employment action. While the Ninth Circuit has declined to adopt a "bright line rule," it is clear that consideration of a motion based on qualified immunity requires consideration of the temporal nexus and that, at some point, the defamatory statements become "too remote in time" to support a claim:

> The *Campanelli* court refused, however, to adopt a bright line rule "that defamatory statements made by an employer any time after the date of termination are not made 'in the course of the termination.'" Instead, the court held that the statements must be "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." Accordingly, we must evaluate whether it was clearly established that there was a *temporal nexus* between [the defamatory statements] and Plaintiffs' terminations, *or whether the statements were "too remote in time from the termination."*

*Tibbetts*, 567 F3d at 538 (internal citations omitted, emphasis added).

In addition, Boggs contends that the temporal nexus issue is not properly before the court because the facts needed to evaluate the argument are disputed and inseparable from the merits. This argument seems to rest on some confusion concerning both the "publication" and the "in the course of termination" requirement. Relying on *Cox*, 359 F3d at 1112, Boggs contends that "publication" occurs when a determination is made that the disciplinary documents are public records available upon demand. For the same reasons as discussed in *Boggs II* F&R, pp. 13-14 (adopted by *Boggs II* Order), this court rejects that argument. Publication of the stigmatizing charges is a non-negotiable element of an occupational liberty interest claim. Not until that critical event has transpired is a liberty interest claim triggered. The cases use varying phrases to describe this requirement, alternately requiring that the allegedly stigmatizing statements must be "publicly disclosed," "made public," or "published." It is not enough that the stigmatizing information is discussed at a termination meeting:

> [T]he asserted reasons for [the termination] decision were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories after this litigation commenced. Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity was thereby impaired.

*Bishop v. Wood*, 426 US 341, 348-49 (1976); *see also Debose v. U. S. Dept. of Agriculture*, 700 F2d 1262, 1266 (9th Cir 1983) ("A liberty interest in future employment is only abridged when an employee's termination creates a stigma foreclosing freedom to take advantage of other employment opportunities. . . . There can be no such stigma when there is no public disclosure of the reasons for the discharge.") (citations omitted).

15 - FINDINGS AND RECOMMENDATIONS

Nor is it sufficient if the stigmatizing statements are merely placed in a personnel file because that act "does not constitute publication under Oregon law sufficient to require notice and a name-clearing hearing." *Boggs II* F&R, p. 14

At oral argument, Boggs asserted that his liberty interest claim was supported by a close temporal link measured between: (1) the date defendants decided not to honor his request to revoke his resignation (some time after the February 5, 2007 request made in the Tort Claims Notice and before May 11, 2007); and (2) the date that defendants decided that the investigative report was not exempt from disclosure (some time after May 11, 2007 when they were served with the complaint in *Boggs I*). This argument rests on Boggs' contention that the relevant temporal nexus is between the "stigmatizing statements" and the "adverse employment action," based on the following language from *Tibbetts*:

> *Campanelli* held "that there must be some temporal nexus between the employer's statement and the termination" and that the stigmatizing statements cannot be too remote in time to be considered "in the course" of the plaintiff's termination.

*Tibbetts*, 567 F3d at 538, quoting *Campanelli*, 100 F3d at 1483.

As just noted, *Cox* does not open the door to a "publication" date based on placement of the investigative report in Boggs' employment file. Similarly, the "decision" that the document was not exempt under Oregon's public records laws is not critical. Instead, it is the date of the actual disclosure which arguably stigmatized Boggs in the public eye. That event occurred with the public disclosure of the allegedly stigmatizing statements either on May 30, 2007 (Supplemental Affidavit of Stephen L. Brischetto (*Boggs I*, docket #94), Ex. 2, p. 6 ("The report,

16 - FINDINGS AND RECOMMENDATIONS

obtained Wednesday [May 30, 2007] by The Oregonian through a public records request, also recommended firing Boggs.")), or May 31, 2007 ( FAC, ¶ 18).

The other end of the temporal nexus, the adverse employment action, is when Boggs' employment was terminated.  According to Boggs, that date was when defendants decided not to accept the revocation of his resignation made in the Tort Claims Notice dated February 5, 2007.  He sets that date as late as when he filed suit on May 10, 2007, or when he served defendants on May 11, 2007 (*Boggs I* Notice of Removal (docket #1), ¶ 1), which effectively ended any negotiations over whether his revocation of his resignation should be accepted.

This court need not resolve which event or date is critical.  Even if this court were to accept Boggs' best case argument regarding the timing between the alleged adverse employment action and the publication, there is still at least a 19 or 20 day gap between his outside "decision" date of May 11, 2007, and the dissemination of the investigative report to the media on May 30 or 31, 2007.  That 19 or 20 day gap places the temporal nexus in this case on exactly the same footing as the temporal nexus in *Tibbetts*:

> This [19 day] time frame falls between the week that *Campanelli* found to satisfy the 'temporal nexus' and the months and years that *Martz*,[10] *Hadley*,[11] and *Ray*[12] found temporally insufficient. . . . . At the time the Releases occurred [on February 15, 2005 and June 6, 2006], a reasonable person . . . could not have known by recourse to then-extant case law whether a stigmatizing statement made

---

[10] *Martz v. Incorporated Village of Valley Stream*, 22 F3d 26, 32 (2nd Cir 1994) (holding that a statement published five months after the plaintiff's termination was not made in the course of dismissal).

[11] *Hadley v. Du Page County*, 715 F2d 1238, 1247 (7th Cir 1983) (holding that a statement to the press six days after the plaintiff's termination was "at the time of" termination, but that a statement published two years later "was too remote in time to meet the stigma plus test").

[12] *Ray v. Tennessee Valley Auth.*, 677 F2d 818, 824 (11th Cir 1982) (holding that a six year lapse is long enough to sever the temporal nexus of statements to termination fo the plaintiff's employment).

17 - FINDINGS AND RECOMMENDATIONS

>nineteen days after Plaintiff's termination would violate *Campanelli's* 'temporal nexus' test. Thus, we conclude that the parameters of at least one element required to secure Plaintiff's right to a name-clearing hearing were not clearly established at the time of the [publication].

*Tibbetts*, 567 F3d at 538.

The parties have not cited, nor is this court aware of, any case law between February 15, 2005 (the date of the earliest stigmatizing statement in *Tibbetts*) and May 31, 2007 (the outside date for the "publication" in this case), which would have made it any more clear that a stigmatizing statement made 19 or 20 days after the final decision to not accept Boggs' revocation of his resignation would violate the temporal nexus test. Accordingly, *Tibbetts* mandates that the individual defendants are entitled to qualified immunity because the law was not clearly established.

## II. Other Arguments

Defendants Sowle and Short also seek dismissal because: (1) the FAC fails to plead sufficient facts to state a claim by merely alleging that they provided legal advice without alleging the nature of that advice; and (2) the claim for the denial of a post-deprivation process is not timely filed. Defendants Hoover, Bradley and French also seek summary judgment because: (1) they had no authority to offer Boggs a name-clearing hearing and, thus, are not proper defendants; and (2) the statute of limitations has expired on any claim for denial of a post-deprivation hearing.

As discussed above, defendants are entitled to qualified immunity against Boggs' due process claim whether premised on the denial of a pre-deprivation or post-deprivation name-

clearing hearing. Because that issue is dispositive as to all portions of Boggs' claim and as to each defendant, this court need not address the other issues raised by defendants.

## RECOMMENDATIONS

For the reasons set forth above, Defendants Sowle and Short's Motion to Dismiss Amended Complaint (docket #89) and Defendants Hoover, Bradley, and French's Motion for Summary Judgment Against First Amended Complaint (docket #91) should be GRANTED because each remaining individual defendant is entitled to qualified immunity. To the extent any portion of the *Boggs I* F&R may be construed to conflict with this decision, the ruling is hereby vacated.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due June 9, 2011. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 23rd day of May, 2011.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge